UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------
ESTELA VALDEZ,                          Civil No. 16-cv-04371-ADS-SIL

                     *Plaintiff,*       United States Courthouse
            v.                          Central Islip, New York

JOHN DOE CORP. 1 et al,                 April 4, 2017
                     *Defendants.*      11:03:38 am to 11:19:36 am
------------------------------------


TRANSCRIPT FOR CIVIL CAUSE
- SHOW CAUSE HEARING -
BEFORE THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE-JUDGE

**FILED**
**CLERK**

JGK 04/13/2017
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

A P P E A R A N C E S :

*For Plaintiff:*             GARRETT D. KASKE, ESQ.
                             Shulman Kessler LLP
                             534 Broadhollow Road, Suite 275
                             Melville, New York 11747
                             (631) 499-9100; (631) 499-9120 fax
                             gkaske@shulmankessler.com

*For Defendant:*             FREDERICK C. SUNG, ESQ.
                             Weinstein, Kaplan & Cohen, P.C.
                             1325 Franklin Avenue, Suite 210
                             Garden City, New York 11530
                             (516) 877-2525; (516) 877-7760 fax
                             fcs@wkc-law.com

                             DANIELE DARLENE DE VOE, ESQ.
                             Weinstein, Kaplan & Cohen, P.C.
                             ddd@wkc-law.com

*Transcriber:*               AA Express Transcripts
                             195 Willoughby Avenue, Suite 1514
                             Brooklyn, New York 11205
                             (888) 456-9716; (888) 677-6131 fax
                             aaexpress@court-transcripts.net


*(Proceedings recorded by electronic sound recording)*

Valdez v. John Doe Corp. 1 et al - 4/4/17                2

COURTROOM DEPUTY:  Calling case 16-cv-4371, Valdez v. John Doe Corp. 1 et al.  Counsel, please state your appearance.

MR. KASKE:  Good morning, Your Honor, Garrett Kaske, from the Law Firm Shulman Kessler.  Here Plaintiff.

THE COURT:  Good morning.

MR. SUNG:  Good morning, Judge, Frederick Sung, from the Office of Weinstein, Kaplan & Cohen, for the Defendants.

THE COURT:  And?  Who's with you?

MR. SUNG:  Oh.  And here's my partner, Daniele De Voe. I apologize.

THE COURT:  No problem.  Good morning.  Please be seated.

MS. DE VOE:  Good morning, Your Honor.

THE COURT:  Okay.  We're here on an order to show cause.  I have a letter, which is Docket Entry 30, which is in favor of the motion to quash the subpoena.  I have the response, Docket Entry 26.  Both entries have attachments.  I'll put it to you bluntly, Mr. Sung.  I don't get it.  There seems to be nothing wrong with this subpoena at all.  And the one thing you haven't even addressed in your letter is the Second Circuit's holding in the *Cheeks* case, under which none of this would be confidential.

MR. SUNG:  We respectfully believe the exact opposite, unsurprisingly.  And that this Court has no discretion, except for the fact that it must quash the subpoena for the simple

Valdez v. John Doe Corp. 1 et al - 4/4/17                3

reason that it's beyond the 100-mile rule.

THE COURT:  But they do business in New York.

MR. SUNG:  The standard is whether they regularly transact business in New York.  Now, this is somewhat of a case of first impression, based on my preliminary research last night, that regularly transacts business.  It's a stretch to say that their *pro hac vice* appearances, the KKC's *pro hac vice* appearances once in a while, maybe once every year, every other year, constitutes regularly transacting business in New York.

THE COURT:  And what about the cases that say when you're just mailing documents and they don't have to show up?

MR. SUNG:  Those cases are from the Northern District of Ohio, and do not bind this Court in any way, shape or form.

THE COURT:  No, they don't.  I'm not suggesting that the Court's bound, but your analysis that this Court has no discretion, I think is a little bit surprising.  And it also doesn't deal with the fact that I'm not sure you have any standing to make this motion.  The cases I've seen, and the one decision I wrote on this suggests that unless there's a privilege issue, which there is clearly not, or you're dealing with confidential documents, which I think the *Cheeks* case decision in the Second Circuit takes care of, not confidential.

MR. SUNG:  Well, in *Jaynes v. Jaynes*, which the Second Circuit affirmed from the Northern District of New York, the Second Circuit stated without equivocation that if there's a

Valdez v. John Doe Corp. 1 et al - 4/4/17                    4

violation of a 100-mile rule, then the subpoena is invalid as a matter of law.  And they are in Bensalem, Pennsylvania, which is very far away from here.  It's at least 130 miles.

THE COURT:  Oh, I'll take your word that it's more than 100 miles away.  Don't worry about that.

MR. SUNG:  And with regard to the standing argument, it's not simply a matter of privilege that allows us to have standing to oppose the subpoena.  If you cannot show a privilege as a term of art, you can still have standing to quash a subpoena or oppose a subpoena if you have some other type of privacy right that you can show.

THE COURT:  Correct.

MR. SUNG:  And we do have -- parts of the documents that were discovered, so to speak, in Roman et al. were income tax documents, corporate tax returns, individual tax returns, and as we mentioned in our letter motion, there was a confidentiality provision in the stipulation of settlement.

THE COURT:  That's not binding on this Court at all. And in fact, in today's court, in a wage and hour case, that would be rejected.

MR. SUNG:  But that's a pre-*Cheeks* settlement agreement, so there's no reason that we can't benefit from a pre-*Cheeks* agreement --

THE COURT:  I'm not sure that's right at all.

MR. SING:  -- that was affirmed by this Court.

Valdez v. John Doe Corp. 1 et al - 4/4/17                5

THE COURT:  I'm not sure that's right at all.

MR. SUNG:  Well, we obviously still firmly adhere to that position.

THE COURT:  Prior to *Cheeks*, you had to have it so-ordered for it to be binding on this Court.  Just a confidentiality agreement alone wouldn't do it.

MR. SUNG:  Well, that settlement agreement was accepted by the Court.  So, we believe that we should --

THE COURT:  Except, was it so-ordered?

MR. SUNG:  So, we believe that we should benefit from it.  And not withstanding that, we still have our privacy rights in terms of income taxes which were treated very carefully by the Courts.  You need a court order for those to be discoverable, unless you put your income at issue.  And in this instant case, we've already admitted that we make over $500,000 a year with regard to the FLSA threshold.

THE COURT:  Well, we can talk about the tax documents. I'm not so concerned about that.  We can work around the tax documents.  I'm concerned that there are other documents, and the issue that wouldn't be subject to that analysis.

MR. SUNG:  But there are other documents.  There are tax receipts; there are all these other private financial --

THE COURT:  Well, let's say there are tax documents like quarterly tax documents.  The ones that just deal with payroll.  Well, even --

Valdez v. John Doe Corp. 1 et al - 4/4/17                6

THE COURT: That would be relevant.

MR. SUNG: Not withstanding a carve-out, there's still the overwhelming relevancy requirement. As Mr. Kaske's firm argued so eloquently in *Ireh v. Nassau University Medical Center* before Judge Tomlinson, relevancy is an overriding requirement --

THE COURT: I agree.

MR. SUNG: -- with regard to any Rule 45 subpoena. In the instant matter, with all due respect, Your Honor, in 2004, which is when the facts surrounding *Roman et al*, began accruing, I was a freshman in high school in Bronx Science, and suspect that Mr. Kaske was still in high school as well, since he's of similar age.

THE COURT: I hate Bronx Science.

(Laughter.)

THE COURT: Brooklyn Tech.

MR. SUNG: So, with all due respect, it's shocking and if an argument cannot be made in good faith that there's relevancy between facts surrounding different Defendants, and whatever employment practices may or may not have occurred back then with the present day, 13 years later.

THE COURT: Two suggestions. One, when you say with all due respect, that's not what a court hears. I was in New York Supreme where a judge walked down off the bench and said every time you say with "all due respect" or "respectfully, what

Valdez v. John Doe Corp. 1 et al - 4/4/17                7

you're really saying is 'F' you.

(Chuckling.)

THE COURT:  Now, I didn't say it; I'm quoting.  Do what you want with that one.

MR. SUNG:  I disagree with that, Your Honor.

THE COURT:  Second, words in correspondence to the Court like spurious, which is, I think, in your letter, and another word you just used, that's risky language to me, because frankly, I don't think so.  I think embedded within any FLSA analysis is a recklessness requirement in order for a Defendant to take advantage of either the liquidated damages provision or a three-year statute of limitation, which requires a showing of willfulness.  So, I don't think there's anything spurious about Plaintiff trying to show that your client knew it's obligations under the Fair Labor Standard Act and theoretically -- I don't know what happened in this case; theoretically, ignored those requirements.  Even if it was 12 years ago, because knowledge is knowledge, assuming it's the same actors involved.  So, I am not in love with that argument at all.  But Mr. Kaske, what about this 100-mile thing?

MR. KASKE:  Your Honor, I would actually agree with Defendants that this is a matter of first impression.  It appears in New York as to whether or not the 100-mile rule actually applies if a recipient of a subpoena is able to mail or email documents.  The cases cited by Defendant's counsel, *Jaynes*

Valdez v. John Doe Corp. 1 et al - 4/4/17                8

in particular, are rather old and not controlling here.  The *Jaynes* was 1974, when you had to be within 100 miles of the recipient to even issue the subpoena.  Whereas now, this Court can issue subpoenas anywhere in the nations.  The question is whether or not the person has to appear.

THE COURT:  Well, that rule has been revised, right?  Originally, you would have had to issue it out of Pennsylvania.

MR. KASKE:  Exactly.

THE COURT:  But now it's changed.

MR. KASKE:  Exactly.

THE COURT:  You can issue out of here.

MR. KASKE:  So, *Jaynes* and the other case, which they cite, which involved witnesses appearing who were dock workers in Boston, having to come to New York, those cases have no application to the present case, KKC doesn't have to appear in New York, they merely have to email the documents, which they've already consented to do.

Furthermore, as we've mentioned in our papers, they regularly do business in New York; they have someone of-counsel working Astoria, who maintains an office in Astoria; they advertise themselves as New York attorneys; and they regularly appear, whether *pro hac vice* or otherwise, in New York.  In the Second Department, First Department --

THE COURT:  Are they subject to law suit in New York?

MR. KASKE:  Sorry?

Valdez v. John Doe Corp. 1 et al - 4/4/17                 9

THE COURT:  Let's say they had a client, who wanted to sue them here.  This is hypothetical.  In the extreme.

MR. KASKE:  Yes.

THE COURT:  In the Eastern District, would they have to defend here?

MR. KASKE:  I believe so, Your Honor.

THE COURT:  Okay.

MR. KASKE:  I assumed they'd be here, if they were before Your Honor, arguing to the contrary.  But in this case, they haven't produced -- they didn't take any position as to whether or not they oppose our subpoena.  And they're willing to comply.

THE COURT:  No, they didn't represent that they aren't subject to the subpoena.

MR. KASKE:  Exactly.

THE COURT:  At all.  No, I understand that.  That's slightly different situation.  Okay.  So, now you're both agreeing we have an issue of first impression.  All right.  Is there anything you want to add, Mr. Sung?

MR. SUNG:  Yes, Your Honor.  With regard to Plaintiff's counsel's assertion that the fact that *Jayne v. Jayne* is from 1974.  It's still a case of the Second Circuit that has not been overruled; it's well-established precedent because it was issued in that year; and the entire premise of the Northern District of Ohio case --

Valdez v. John Doe Corp. 1 et al - 4/4/17                    10

THE COURT:  Yeah, but what if the rule has been revised?

MR. SUNG:  I apologize?

THE COURT:  What if the rule has been revised?  The Federal Rules have been revised since Jayne was decided.

MR. SUNG:  But there's nothing with regard to the 100-mile rule that's been revised.  There's no statutory provision stating that --

THE COURT:  No, no.  That's true, except -- this would be by inference.  You're right, but -- you don't have to stand by the way.  It used to be, to get documents in Pennsylvania, you'd have to issue a subpoena out of the Pennsylvania District Court.  You no longer have to do that.  So, the question would be -- I don't know how that would interplay with the 100-mile rule.

MR. SUNG:  As I was stating, the Second Circuit has affirmed; it's never been overruled; it's never gotten --

THE COURT:  No, that I got.  I got.

MR. SUNG:  -- negative treatment; and with regard to liquidated damages, which you had mentioned earlier, there is no recklessness -- there's no scienter required.  After the 2009 amendments to the statutes, simply proving that there was a violation of the FLSA is grounds for liquidated damages.  And in any event, we've withdrawn the defense that FLSA does not apply to our clients.

Valdez v. John Doe Corp. 1 et al - 4/4/17                11

THE COURT:  There's automatically liquidated damages in every case?  There's no showing whatsoever.

MR. SUNG:  That's a matter of law.  That's a statute. In 2009, they struck the willfulness requirement under the New York Labor Law in order to comply -- in order to match?

MS. DE VOE:  Not quite.

THE COURT:  The New York Labor Law or the Fair Labor Standards Act?

MS. DE VOE:  The New York Labor Law was amended to match FLSA.  That willfulness is not required.

THE COURT:  Yes, that I know.

MS. DO VOE:  And an employer has the ability to prove good faith to negate liquidated damages properly said.

THE COURT:  That's under the New York Labor Law. Under the Federal Law, there's still an issue.

MR. SUNG:  To the extent that there is any issue, which we don't believe that there is, all that information is discoverable from our client.  There's no reason to bother a third party with all this information.  If Plaintiff has any questions regarding our client's employment practices, etcetera, the same could be found at a deposition of the principal.

THE COURT:  That's an objection that the subpoena would make, isn't it?

MR. SUNG:  I'm sorry?

THE COURT:  The recipient of the subpoena would make

Valdez v. John Doe Corp. 1 et al - 4/4/17          12

that argument; don't bother me; get it from you, Defendant.  Is that your argument to make?

MR. SUNG:  Yes, it is, because it's our documents and it's our tax returns.  It's our privacy information.

THE COURT:  Well, let's hold.  Mr. Kaske, did you want the tax documents?

MR. KASKE:  Your Honor, if we could have avoided today's conference just by talking about what documents are at issue and what things they might specifically object to, I would have gladly said, you know, we don't need the tax returns.  We might not need the tax returns from, like I said, seven years ago.  I'm obviously, reserving my rights to maybe seek the tax returns for the years in which my client worked for the company from 2012 to 2016.

That said, I don't believe I need the tax returns that were produced in the previous case, no.

THE COURT:  Here's what we're going to do.  Here's what we're going to do.  I was debating whether to write on this because it was a first impression, but I'm not going to.  What I am going to do is deny the motion to quash the subpoena, with the caveat, and I'll go through some reasons for the record, so that if you want to object or whatever, you certainly have the right to do that.  But (A), Mr. Kaske, all the documents you get, you're going to keep confidential and share with your adversary.  So, that if there's private information and tax

Valdez v. John Doe Corp. 1 et al - 4/4/17                    13

returns or something like that, they have a chance to pre-emptively put together a protective order for that.  So, don't use these documents for any other purpose but this litigation.  And if you have to show them to your client, advise your client accordingly.  I don't know that you need to show these to your client.  But give them a chance to look through the same documents and determine if there's something confidential in there.

The reasons for denying the motion brought by order to show cause are as follows.  (1) I do not believe that the Defendants have standing in this case.  I absolutely rejected the notion of a prior settlement agreement with confidentiality clause binding this Court for two reasons.  One, there's no indicating that that agreement was so-ordered; two, I think it would probably violate *Cheeks* in today's environment.

While I appreciate Mr. Sung's position that they want to take advantage of that, I get that; I just don't think it's efficient.  And so, there's no argument that privilege is at issue.  In fact, I think the subpoena specifically asked for non-privileged documents.  So, I don't think there's anything confidential or privileged in there for the Defendants have no standing.

Second, with respect to the 100-mile rule, two points.  I'm not going to decide this issue of first impression.  I believe that the representation that they do business in New

Valdez v. John Doe Corp. 1 et al - 4/4/17                    14

York, including the representation on their website is sufficient at this stage to show that they do do business in New York sufficient to enforce the subpoena.  I also note that the recipient of the subpoena has indicated a willingness to comply with that subpoena, rather than assert that they don't do business sufficient to enforce the subpoena.  And that their non-position weighs in the Court's analysis.

With respect to relevance, I think that these documents are relevant to the Fair Labor Standards Act analysis for the reasons I've stated before.  One issue being willfulness, showing a knowledge of obligation under the Fair Labor Standards Act, even if that knowledge derives from a law suit ten years ago, or perhaps a little more.  It's unclear to me.  Still shows that the knowledge necessary, or is relevant to the inquiry about knowledge necessary to permit an award of liquidated damages under the federal statute, and to take advantage of a three-year statute of limitations if that comes into play here.  I don't know that it does.

So, the documents are also relevant.  I think I've laid it out sufficient that you can order the transcript.  And so, if you want to object to the District Judge, you can do that.  Does anybody have any questions about my reasoning, just so that we can flush out the record for the Defendants?

(No response.)

THE COURT:  Mr. Sung?

Valdez v. John Doe Corp. 1 et al - 4/4/17                15

MR. SUNG:  No, I do not have any questions, Your Honor.

THE COURT:  All right.  Mr. Kaske, anything else you want to put on the record just to fill this out if you need to?

MR. KASKE:  No, Your Honor.

THE COURT:  All right.  Is there anything else we need to talk about in terms of the case?  Close the door on this and then move to other issues.

MR. KASKE:  No, Your Honor.  I think we're doing fine. We have some discovery issues that we're trying to work out amongst ourselves, as well as possibly amending the complaint soon, hopefully.

THE COURT:  Mr. Sung, how about you?

MR. SUNG:  No, not at all, Your Honor.

THE COURT:  All right.  Thank you all.  We are concluded.

MR. KASKE:  Thank you, Your Honor.

- o0o -

CERTIFICATION

I, Rochelle V. Grant, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated:  April 10, 2017

_____
Rochelle V. Grant
AA Express Transcripts
(888) 456-9716